EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

                        Plaintiff,

            v.                                    Civil Action No. 2:16-cv-05043-JS

LEON G. COOPERMAN and
OMEGA ADVISORS, INC.,

                        Defendants.

## CONSENT OF DEFENDANT LEON G. COOPERMAN

1.      Defendant Leon G. Cooperman ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.  Solely for the purposes of settlement of this action, Defendant waives any objection Defendant may have to venue in the Eastern District of Pennsylvania and consents to seeking vacatur of the portion of this Court's March 20, 2017 Order dismissing Claims II and III of the complaint for lack of venue such that, upon approval of the Court, Claims II and III of the complaint shall be reinstated.

2.      Without admitting or denying the allegations of the complaint (except as provided herein in paragraph 12 and except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)    permanently restrains and enjoins Defendant from violating Sections

10(b), 13(d), 16(a) of the Securities Exchange Act of 1934 ("Exchange

Act") and Rules 10b-5, 13d-1, 13d-2 and 16a-3 thereunder;

(b)    orders, with respect to Claim I of the complaint, Defendant to pay, jointly

and severally with Defendant Omega Advisors, Inc. ("Omega"),

disgorgement in the amount of $1,759,049, plus prejudgment interest

thereon in the amount of $429,041;

(c)    orders, with respect to Claim I of the complaint, Defendant to pay, jointly

and severally with Omega, a civil penalty in the amount of $1,759,049

under Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

(d)    orders, with respect to Claims II and III of the complaint, Defendant to

pay an additional civil penalty in the amount of $1,000,000 under Section

21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

3.    Defendant agrees that he shall not seek or accept, directly or indirectly,

reimbursement or indemnification from any source, including but not limited to payment made

pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays

pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof

are added to a distribution fund or otherwise used for the benefit of investors.  Defendant further

agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any

federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final

Judgment, regardless of whether such penalty amounts or any part thereof are added to a

distribution fund or otherwise used for the benefit of investors.

4.    Defendant shall comply with the following undertakings:

A.    Defendant and Omega shall retain, within thirty (30) days after entry of the Final Judgment, at Defendant's and/or Omega's expense, an Independent Compliance Consultant (the "Compliance Consultant") not unacceptable to the Commission's staff for a period of engagement that will last either until May 1, 2022 or until such time as Omega ceases to be a registered investment adviser, whichever occurs first (the "Period of Engagement"). For the avoidance of doubt, all of the undertakings and obligations set forth in paragraphs 4.A through 4.E shall continue for the Period of Engagement. The Compliance Consultant, Defendant, and Omega shall perform the following tasks:

    i.    Within thirty (30) days after retention of the Compliance Consultant, the Compliance Consultant, Omega and Defendant shall implement a system that requires that Defendant, Omega and/or any of their agents or employees who make a decision to trade or otherwise commit capital to any security and/or direct a trade of any security (the "Trader") certify in writing that, prior to execution of such trade, the Trader was not aware of any material nonpublic information regarding the traded security such that the trade, or direction of the trade, violated Section 10(b) of the Exchange Act of 1934. This certification shall be made on a monthly basis.

    ii.    The Compliance Consultant shall conduct a review of Omega's training, policies and procedures, and Defendant's practices, with respect to compliance with the prohibitions on insider trading and tipping, including as they relate to the obtention or use of material nonpublic information,

with appropriate consideration given to Omega's and Defendant's practice of communicating directly with senior executives of publicly-traded companies.

iii.    Within forty-five (45) days after the end of the Compliance Consultant's review, which in no event shall be more than two hundred seventy (270) days after the date of the Compliance Consultant's retention, the Compliance Consultant shall submit a written and dated report of the findings of its review to Omega, Defendant and the Commission staff (the "Report"). Omega and Defendant shall require that the Report include a description of the review performed, the names of the individuals who performed the review, the conclusions reached, any recommendations for changes in or improvements to Omega's policies and procedures and/or Defendant's practices, and a procedure for implementing the recommended changes in or improvements to Omega's policies and procedures and/or Defendant's practices.

iv.    The Report shall include a recommendation for implementing a method to review Omega's and Defendant's trades during the Period of Engagement to ensure that there was no trading in violation of Section 10(b) of the Exchange Act of 1934. In order to facilitate this review, the Compliance Consultant shall have access, without prior notice (except to Omega's General Counsel, to permit him reasonable time to determine whether privilege attaches to any such documents), to the non-privileged electronic communications of Defendant and any relevant Omega employees,

consultants or agents.  The Compliance Consultant also shall have access to all of Omega's and Defendant's trading records and research.

v. The Compliance Consultant shall be on-site at Omega's principal office a minimum of one day per month to ensure compliance with the terms set forth in the Final Judgment.

vi. The Compliance Consultant shall conduct, or Omega and Defendant shall retain a nationally recognized law firm not unacceptable to the Commission staff to conduct, at least two trainings per year relating to compliance with the prohibitions on insider trading and tipping, including the obtention or use of material nonpublic information, with appropriate consideration given to Omega's and Defendant's practice of communicating directly with senior executives of publicly-traded companies.

vii. Among the issues the Compliance Consultant shall consider in formulating its recommendations are whether to empower and require Omega compliance personnel (i) to monitor telephonic and electronic communications of Omega personnel involved in securities trading decisions or execution, and (ii) to conduct internal investigations of securities trading that meets certain profitability (including loss avoidance) thresholds or is done in close proximity to certain public disclosures.

viii. Omega and Defendant shall adopt all recommendations contained in the Report within ninety (90) days after delivery of the Report; provided, however, that within thirty (30) days after delivery of the Report, Omega

and Defendant shall in writing advise the Compliance Consultant and the Commission staff of any recommendations that Omega or Defendant considers to be unduly burdensome, impractical, or inappropriate. Omega or Defendant need not adopt that recommendation at that time but shall simultaneously propose in writing an alternative mechanism designed to achieve substantially the same objective or purpose.

ix.    As to any recommendation on which Omega, Defendant and the Compliance Consultant do not agree, Omega, Defendant and the Compliance Consultant shall attempt in good faith to reach an agreement within sixty (60) days after delivery of the Report. Within fifteen (15) days thereafter, Omega and Defendant shall require that the Compliance Consultant inform Omega and Defendant in writing of the Compliance Consultant's final determination concerning any recommendation that Omega or Defendant considers to be unduly burdensome, impractical or inappropriate. Within fifteen (15) days after Omega's and Defendant's receipt of this written communication from the Compliance Consultant, Omega or Defendant may seek approval from the Commission staff not to adopt recommendations that Omega or Defendant can demonstrate to be unduly burdensome, impractical or inappropriate. Should the Commission staff agree that any such proposed recommendations are unduly burdensome, impractical or inappropriate, Omega or Defendant shall not be required to abide by, adopt, or implement those recommendations.

x.      Subject to the limitations contained in paragraph 4.A.iv., Omega and
        Defendant shall cooperate fully with the Compliance Consultant and shall
        provide access to such of their files, books, records, and personnel as are
        reasonably requested by the Compliance Consultant for review.

xi.     To ensure independence of the Compliance Consultant, Omega and
        Defendant shall not have the authority to terminate the Compliance
        Consultant or substitute another independent compliance consultant
        without the prior written approval of the Commission staff (which
        approval shall not be unreasonably withheld), and shall compensate the
        Compliance Consultant for services rendered pursuant to this undertaking
        at reasonable and customary rates.

xii.    Omega and Defendant shall require the Compliance Consultant to enter
        into an agreement that provides that, during the Period of Engagement and
        for a period of two (2) years thereafter, the Compliance Consultant shall
        not, without prior written consent of the Commission staff, enter into any
        employment, consultant, attorney-client, auditing or other professional
        relationship with Omega, Defendant, or any of Omega's present or former
        (if they occupied that capacity at any time during the Period of
        Engagement) affiliates, directors, officers, employees, or agents.  The
        agreement shall also provide that the Compliance Consultant shall require
        that any firm with which the Compliance Consultant is affiliated, and any
        person engaged to assist the Compliance Consultant's performance of its
        duties in respect of the engagement contemplated hereby, shall not,

without written prior consent of the Commission staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Omega, Defendant, or any of Omega's present or former (if they occupied that capacity at any time during the Period of Engagement) affiliates, directors, officers, employees, or agents, during the Period of Engagement and for a period of two (2) years thereafter.

xiii.   Omega and Defendant shall preserve for a period of not less than six (6) years from its creation, and for the first two (2) years in a reasonably accessible location and format, any record of Omega's or Defendant's compliance with the requirements set forth herein.

xiv.   For good cause shown, the Commission staff may extend any of the procedural dates set forth above (other than the duration of the Period of Engagement).  Deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered the last day.

B.   Omega and Defendant shall provide to the Commission staff, within thirty (30) days after retaining the Compliance Consultant, a copy of an engagement letter detailing the Compliance Consultant's responsibilities, which shall include the tasks set forth above.

C.   In addition to the initial Report, for the Period of Engagement, the Compliance Consultant shall provide an additional annual report to Defendant, Omega and the Commission staff detailing the Compliance Consultant's activity during the previous year, the names of the individuals

who performed the relevant tasks and/or review, the conclusions reached, and any recommendations for improvements to Omega's and/or Defendant's policies and procedures.

D.     Omega and Defendant shall retain, within sixty (60) days after entry of the Final Judgment, at Defendant's expense, a nationally recognized law firm (the "Law Firm"), not unacceptable to the Commission's staff, to file beneficial ownership reports and amendments thereto required under Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 thereunder, on behalf of Defendant, for the Period of Engagement.  In addition to filing such beneficial ownership reports and amendments, during the Period of Engagement, the Law Firm will conduct an annual review of, and training regarding, Omega's and Defendant's policies and procedures, and Defendant's practices, insofar as they relate to the filing, on behalf of Defendant, Omega, and Omega's clients, of beneficial ownership reports and amendments thereto required under Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 thereunder.  In addition, during the Period of Engagement, the Law Firm shall provide an annual certification to the Commission staff regarding the compliance of Defendant's beneficial ownership reporting with the requirements of Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 thereunder.

E.     Omega and Defendant shall certify, in writing, compliance with the undertakings set forth above on an annual basis during the Period of Engagement.  Each certification shall be provided by February 1 of the new

calendar year. Each certification shall identify the relevant provisions of the Final Judgment, provide written evidence of compliance in the form of a narrative, and be supported by exhibits reasonably sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Omega and Defendant agree to provide such evidence. Omega and Defendant shall submit the certification and supporting material on an annual basis to Brendan P. McGlynn, Assistant Regional Director, with a copy to the Office of Chief Counsel of the Enforcement Division.

5.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

7.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

9.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

12.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant

or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Defendant does not deny the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.    Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.    Defendant agrees that, upon presenting the Final Judgment to the Court, Defendant, Omega and the Commission will jointly move the Court for approval of the settlement and ask, as part of that motion, that the Court (1) vacate the portion of its March 20, 2017 Order that dismissed Claims II and III of the complaint for improper venue, and (2) stay ongoing discovery.  Defendant and Omega do not waive any objections to venue in the Eastern District of Pennsylvania for any other purpose or any other suit, action or proceeding.

16.    If, for any reason, the Final Judgment is not entered by the Court, then except as provided in an April 19, 2017 tolling agreement, the Commission, Defendant and Omega shall revert to the positions they were in on April 10, 2017.  This means, among other things, that Claims II and III remain dismissed without prejudice as set forth in Judge Sánchez's Order dated March 20, 2017.

17.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: __4/24/2017__

_____
Leon G. Cooperman

On __4/24__, 2017, _Leon G. Cooperman_ a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

SUSAN J LEONG
NOTARY PUBLIC-STATE OF NEW YORK
No. 02LE6319863
Qualified in New York County
My Commission Expires February 23, 2019

_____
Notary Public
Commission expires: __2/23/2019__

Approved as to form:

_____
Daniel J. Kramer
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attorney for Defendant Leon G. Cooperman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

                          Plaintiff,

            v.                                    Civil Action No. 2:16-cv-05043-JS

LEON G. COOPERMAN
and OMEGA ADVISORS, INC.,

                          Defendants.

**FINAL JUDGMENT AS TO DEFENDANT LEON G. COOPERMAN**

The Securities and Exchange Commission having filed a complaint and Defendant Leon

G. Cooperman ("Defendant") having entered a general appearance; consented to the Court's

jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final

Judgment without admitting or denying the allegations of the complaint (except as to jurisdiction

and except as otherwise provided herein in paragraph VI); waived findings of fact and

conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

interstate commerce, or of the mails, or of any facility of any national securities exchange, in

connection with the purchase or sale of any security:

(a)      to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rules 13d-1 and 13d-2 promulgated thereunder [17 C.F.R. §§ 240.13d-1 and 240.13d-2], by failing to file, or to file timely, statements, information, documents, and reports, or amendments thereto, as required pursuant to Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2, in the absence of any applicable exemption, after Defendant has acquired, directly or indirectly, the beneficial ownership of any equity security of a class which is registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], and is directly or indirectly the beneficial owner of more than 5 percent of such class.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's

officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 promulgated thereunder [17 C.F.R. § 240.16a-3], by failing to file, or to file timely, statements, information, documents, and reports as required pursuant to Section 16(a) of the Exchange Act and Rule 16a-3, in the absence of any applicable exemption, when Defendant is, directly or indirectly, the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or is a director or an officer of the issuer of such security.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, with respect to Claim I of the complaint, Defendant is liable, jointly and severally with Defendant Omega Advisors, Inc. ("Omega"), for disgorgement of $1,759,049, together with prejudgment interest thereon in the amount of $429,041, and a civil penalty in the amount of $1,759,049 pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].  With respect to Claims II and III of the

complaint, pursuant to Sections 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Defendant

is liable for an additional civil penalty of $1,000,000.  Defendant shall satisfy these obligations

by paying $4,947,139 to the Securities and Exchange Commission within 14 days after entry of

this Final Judgment.

    Defendant may transmit payment electronically to the Commission, which will provide

detailed ACH transfer/Fedwire instructions upon request.   Payment may also be made directly

from a bank account via Pay.gov through the SEC website at

http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank

cashier's check, or United States postal money order payable to the Securities and Exchange

Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of

this Court; Leon G. Cooperman as a defendant in this action; and specifying that payment is

made pursuant to this Final Judgment.

    Defendant shall simultaneously transmit photocopies of evidence of payment and case

identifying information to the Commission's counsel in this action.  By making this payment,

Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part

of the funds shall be returned to Defendant.  The Commission shall send the funds paid pursuant

to this Final Judgment to the United States Treasury.

    The Commission may enforce the Court's judgment for disgorgement and prejudgment

interest by moving for civil contempt (and/or through other collection procedures authorized by

law) at any time after 14 days following entry of this Final Judgment.  Defendant shall pay post

judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein, including, but not limited to, the following undertakings:

1. Defendant and Omega shall retain, within thirty (30) days after entry of the Final Judgment, at Defendant's and/or Omega's expense, an Independent Compliance Consultant (the "Compliance Consultant") not unacceptable to the Commission's staff for a period of engagement that will last either until May 1, 2022 or until such time as Omega ceases to be a registered investment adviser, whichever occurs first (the "Period of Engagement"). For the avoidance of doubt, all of the undertakings and obligations set forth in paragraphs V.1 through V.5 shall continue for the Period of Engagement. The Compliance Consultant, Defendant, and Omega shall perform the following tasks:

a. Within thirty (30) days after retention of the Compliance Consultant, the Compliance Consultant, Omega and Defendant shall implement a system that requires that Defendant, Omega and/or any of their agents or employees who make a decision to trade or otherwise commit capital to any security and/ or direct a trade of any security (the "Trader") certify in writing that, prior to execution of such trade, the Trader was not aware of any material nonpublic information regarding the traded security such that the trade, or direction of

the trade, violated  Section 10(b) of the Exchange Act of 1934.  This
certification shall be made on a monthly basis.

b.     The Compliance Consultant shall conduct a review of Omega's training,
policies and procedures, and Defendant's practices, with respect to
compliance with the prohibitions on insider trading and tipping, including as
they relate to the obtention or use of material nonpublic information, with
appropriate consideration given to Omega's and Defendant's practice of
communicating directly with senior executives of publicly-traded companies.

c.     Within forty-five (45) days after the end of the Compliance Consultant's
review, which in no event shall be more than two hundred seventy (270) days
after the date of the Compliance Consultant's retention, the Compliance
Consultant shall submit a written and dated report of the findings of its review
to Omega, Defendant and the Commission staff (the "Report").  Omega and
Defendant shall require that the Report include a description of the review
performed, the names of the individuals who performed the review, the
conclusions reached, any recommendations for changes in or improvements to
Omega's policies and procedures and/or Defendant's practices, and a
procedure for implementing the recommended changes in or improvements to
Omega's policies and procedures and/or Defendant's practices.

d.     The Report shall include a recommendation for implementing a method to
review Omega's and Defendant's trades during the Period of Engagement to
ensure that there was no trading in violation of Section 10(b) of the Exchange
Act of 1934.  In order to facilitate this review, the Compliance Consultant

shall have access, without prior notice (except to Omega's General Counsel, to permit him reasonable time to determine whether privilege attaches to any such documents), to the non-privileged electronic communications of Defendant and any relevant Omega employees, consultants or agents.  The Compliance Consultant also shall have access to all of Omega's and Defendant's trading records and research.

e.    The Compliance Consultant shall be on-site at Omega's principal office a minimum of one day per month to ensure compliance with the terms set forth in the Final Judgment.

f.    The Compliance Consultant shall conduct, or Omega and Defendant shall retain a nationally recognized law firm not unacceptable to the Commission staff to conduct, at least two trainings per year relating to compliance with the prohibitions on insider trading and tipping, including the obtention or use of material nonpublic information, with appropriate consideration given to Omega's and Defendant's practice of communicating directly with senior executives of publicly-traded companies.

g.    Among the issues the Compliance Consultant shall consider in formulating its recommendations are whether to empower and require Omega compliance personnel (i) to monitor telephonic and electronic communications of Omega personnel involved in securities trading decisions or execution, and (ii) to conduct internal investigations of securities trading that meets certain profitability (including loss avoidance) thresholds or is done in close proximity to certain public disclosures.

h.   Omega and Defendant shall adopt all recommendations contained in the Report within ninety (90) days after delivery of the Report; provided, however, that within thirty (30) days after delivery of the Report, Omega and Defendant shall in writing advise the Compliance Consultant and the Commission staff of any recommendations that Omega or Defendant considers to be unduly burdensome, impractical, or inappropriate.  Omega or Defendant need not adopt that recommendation at that time but shall simultaneously propose in writing an alternative mechanism designed to achieve substantially the same objective or purpose.

i.   As to any recommendation on which Omega, Defendant and the Compliance Consultant do not agree, Omega, Defendant and the Compliance Consultant shall attempt in good faith to reach an agreement within sixty (60) days after delivery of the Report.  Within fifteen (15) days thereafter, Omega and Defendant shall require that the Compliance Consultant inform Omega and Defendant in writing of the Compliance Consultant's final determination concerning any recommendation that Omega or Defendant considers to be unduly burdensome, impractical or inappropriate.  Within fifteen (15) days after Omega's and Defendant's receipt of this written communication from the Compliance Consultant, Omega or Defendant may seek approval from the Commission staff not to adopt recommendations that Omega or Defendant can demonstrate to be unduly burdensome, impractical or inappropriate.  Should the Commission staff agree that any such proposed recommendations are

unduly burdensome, impractical or inappropriate, Omega or Defendant shall
not be required to abide by, adopt, or implement those recommendations.

j.  Subject to the limitations contained in paragraph V.1.d, Omega and Defendant
shall cooperate fully with the Compliance Consultant and shall provide access
to such of their files, books, records, and personnel as are reasonably
requested by the Compliance Consultant for review.

k.  To ensure independence of the Compliance Consultant, Omega and Defendant
shall not have the authority to terminate the Compliance Consultant or
substitute another independent compliance consultant without the prior written
approval of the Commission staff (which approval shall not be unreasonably
withheld), and shall compensate the Compliance Consultant for services
rendered pursuant to this undertaking at reasonable and customary rates.

l.  Omega and Defendant shall require the Compliance Consultant to enter into
an agreement that provides that, during the Period of Engagement and for a
period of two (2) years thereafter, the Compliance Consultant shall not,
without prior written consent of the Commission staff, enter into any
employment, consultant, attorney-client, auditing or other professional
relationship with Omega, Defendant, or any of Omega's present or former (if
they occupied that capacity at any time during the Period of Engagement)
affiliates, directors, officers, employees, or agents.  The agreement shall also
provide that the Compliance Consultant shall require that any firm with which
the Compliance Consultant is affiliated, and any person engaged to assist the
Compliance Consultant's performance of its duties in respect of the

engagement contemplated hereby, shall not, without written prior consent of the Commission staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Omega, Defendant, or any of Omega's present or former (if they occupied that capacity at any time during the Period of Engagement) affiliates, directors, officers, employees, or agents, during the Period of Engagement and for a period of two (2) years thereafter.

m.   Omega and Defendant shall preserve for a period of not less than six (6) years from its creation, and for the first two (2) years in a reasonably accessible location and format, any record of Omega's or Defendant's compliance with the requirements set forth herein.

n.   For good cause shown, the Commission staff may extend any of the procedural dates set forth above (other than the duration of the Period of Engagement).  Deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered the last day.

2.   Omega and Defendant shall provide to the Commission staff, within thirty (30) days after retaining the Compliance Consultant, a copy of an engagement letter detailing the Compliance Consultant's responsibilities, which shall include the tasks set forth above.

3.   In addition to the initial Report, for the Period of Engagement, the Compliance Consultant shall provide an additional annual report to Defendant, Omega and the Commission staff detailing the Compliance Consultant's activity during the previous year, the names of the individuals who performed the relevant tasks

and/or review, the conclusions reached, and any recommendations for improvements to Omega's and/or Defendant's policies and procedures.

4.    Omega and Defendant shall retain, within sixty (60) days after entry of the Final Judgment, at Defendant's expense, a nationally recognized law firm (the "Law Firm"), not unacceptable to the Commission's staff, to file beneficial ownership reports and amendments thereto required under Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 thereunder, on behalf of Defendant, for the Period of Engagement.  In addition to filing such beneficial ownership reports and amendments, during the Period of Engagement, the Law Firm will conduct an annual review of, and training regarding, Omega's and Defendant's policies and procedures, and Defendant's practices, insofar as they relate to the filing, on behalf of Defendant, Omega, and Omega's clients, of beneficial ownership reports and amendments thereto required under Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 thereunder.  In addition, during the Period of Engagement, the Law Firm shall provide an annual certification to the Commission staff regarding the compliance of Defendant's beneficial ownership reporting with the requirements of Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 thereunder.

5.    Omega and Defendant shall certify, in writing, compliance with the undertakings set forth above on an annual basis during the Period of Engagement.  Each certification shall be provided by February 1 of the new calendar year.  Each certification shall identify the relevant provisions of the Final Judgment, provide

written evidence of compliance in the form of a narrative, and be supported by

exhibits reasonably sufficient to demonstrate compliance.  The Commission staff

may make reasonable requests for further evidence of compliance, and Omega

and Defendant agree to provide such evidence.  Omega and Defendant shall

submit the certification and supporting material on an annual basis to Brendan P.

McGlynn, Assistant Regional Director, with a copy to the Office of Chief Counsel

of the Enforcement Division.

## VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, solely for purposes of

exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the

allegations in the complaint are true and admitted by Defendant, and further, any debt for

disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this

Final Judgment or any other judgment, order, consent order, decree or settlement agreement

entered in connection with this proceeding, is a debt for the violation by Defendant of the federal

securities laws or any regulation or order issued under such laws, as set forth in Section

523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

## VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.


Dated: _____, 2017

                                      _____

                                        HONORABLE JUAN R. SÁNCHEZ
                                        UNITED STATES DISTRICT JUDGE